It's an appeal from the Patent Trial and Appeal Board, D'Agostino v. MasterCard. And Mr. Greenspoon, do you want five minutes for rebuttal? Yes, Your Honor. Thank you. I'm going to try to keep better track of time. Well, good morning, Your Honors. May it please the Court. We raised several points of error in our briefing, and today I'd like to focus on two. And those relate to the single merchant limitation claims patentability. And then our alternative argument, and make no mistake, it's an alternative argument. We rank order, we prefer a result that agrees with us on patentability. But the alternative argument is that there ought to be a remand because of the policy change that favored my client, Mr. D'Agostino, during this appeal. So starting with the... And what about your 18 months is 18 months? Well, I'm prepared to address that if it comes up, of course. Not on my account. Save your breath, in other words. Right. Well, I guess my only comment on that is that the road was littered with litigants who never argued against partial institution of IPR. That's true. Moving on to patentability issues. If we agree with the Board's claim construction, then would you agree there's substantial evidence to support their ultimate conclusion? I have to divide the issues in my mind. Part of our appeal is a claim construction of whether the claims require multiple transaction authorization. Right. So if we agree with the Board that it could require just a single transaction, then would you agree that substantial evidence would support the Board's finding? In other words, it turns on the claim construction, right? Maybe that's a better question. Cutting right to the quick, I concede that. If that claim construction is affirmed, then I believe that we have not preserved any independent argument. However, let's get to that claim construction because it's weak and really wrong. And then I'll get to the certain store example later. Your Honors, the prosecution history is sometimes, like here, the best evidence of what a disputed claim term means. And with Your Honors' indulgence, I'll just read briefly from the prosecution history, July 2008, Appendix 1652. Quote, the Franklin patent discloses an invention that is significantly different in several important ways from applicants' invention. Not claim-specific, applicants' invention. Specifically, the Franklin patent relates exclusively to a substitute number that is used for a single transaction only. And the quote ends right there. I'll just pause and say, a substitute number that is used for a single transaction only is exactly this aspect of the Cohen reference used by the Board. And then at Appendix 1637, we note that this remark accompanied a claim amendment that narrowed to add the word purchases to the body of the claim. So it's a one-two punch of prosecution disclaimer. It's the words that were disclaiming scope to cover the Cohen embodiment later used to find an anticipation. And as well, it's a claim amendment, a simultaneous claim amendment. And if there were any doubt from what I just read to you from July 2008, let's go to May 2009 at Appendix 1575. Okay, well, what was the page of the first claim amendment you were saying? The amendment itself, 1637. Okay. And then the remarks that I quoted, 1652. I'll pause for just a second if your honors want to pull up 1575. On that page in May of 2009, the applicant stated again, the Franklin patent does not disclose a payment category that is to a single merchant, but rather a proxy number that is limited to a single transaction. And by then, your honors, as well, the claim language had been amended again with yet another reference to purchases plural as part of what a payment category is. So can I ask this? And this may not be fresh enough. So one can read, tell me why one can't read these several passages as saying, Franklin is about single purchases. It's not about single merchants. Ours is about single merchants. That doesn't mean that yours is about single merchants plus multiple transactions. My answer to that, your honors. It focuses on transaction versus merchant in the distinguishing of Franklin, not single versus multiple. In fact, I believe, to answer your question, I believe it's explaining that the single merchant limitation wording, the verbiage for that, for how you define a payment category limited to a single merchant. The applicant there is defining it not to cover exactly what he said, a proxy number that is limited to a single transaction. So he's sort of sweeping it all in globally. He's saying, if you show me a single use card, which is just a proxy number limited to a single transaction, I'm telling the world I do not intend to cover that. And I'm telling the world explicitly. I'm pointing to a limitation that I say excludes it. And then I'm also amending the claims to add the plural word purchases in important places. So it's not only the prosecution history, your honors. It's also the structure of the specification. If you look to the middle of column 8 in each of the patents, I don't have an appendix site, but the two patents ensued. The claimed embodiments come from the middle of column 8. The paragraph before that, that starts on column 7, is a single use embodiment that the applicant chose not to claim. Where he starts the column 8 paragraph, he talks about, this is where I'm going to discuss the multi-transaction authorization embodiment. So the structure of the specification builds the claims around the specification paragraph that explicitly says multi-transaction authorization. So more proof that the claims mean that. But aren't there dependent claims that talk about multi-transactions? There are. Let's distinguish two things. Yes, your honor. The dependent claims talk about multiple instances of using the card. The independent claims talk about the payment category definition having to include multi-transaction capabilities. So there's a distinction here between how you define the card, what the payment category is, and then the ultimate uses of the card. Now, of course, the dependent claims... Shouldn't that be consistent, though? It is absolutely... The claim structure is absolutely consistent. So claim 1, for example, is, under our contentions, multi-transaction authorization capability. That's the definition of the payment category. So it can't cover a single use card. And then claim, I can't remember, 14 or 15 talks about the instance of multiple uses. Why couldn't a multi-transaction capability also be a single transaction capability? I'm not sure I follow the question. By multi-transaction capability, that's expressly a disclaimer and a disavowal of a single use card. Multi-transaction authorization capability, as the specification describes it. And then it comes into the words of the claims as purchases. And let me also point to the preamble. It talks about making multiple purchases using terminology that forms the antecedent basis for future claim limitations using the term purchases. It's the classic scenario where the preamble does breathe life and meaning into the claim. And then finally, the most undeniable claim language that one can see in the patents.  I would ask your honors to look at the 486 patent claim 24 and the 988 patent claim 17. In the claim limitations for those, there's explicitly the words defining what is a payment category for those claims. It permits a, quote, series of subsequent purchases. Series of subsequent purchases. So there can be no argument that those claims read on top of what the board thought that they did. That is the Cohen embodiment of a single transaction card. So moving to the next patentability error, that's the board misapprehending the so-called certain store example in Cohen. What the board should have determined is that the certain store example falls outside the claim language as previously construed in this court. Now just to recap of that construction by this court, there's a prohibition against, or I think the court called it a timing sequence, but there's a prohibition against what I'm calling pre-identifying what goes into the placeholder for a payment category in terms of the identity of the merchant. So the court said that at a first stage in time, there's a setting of the number of the merchants, but not an identification of who they are. And then at a second point in time, there's the identification of who they are. That's the claim construction from before. This is well briefed on our part why a certain store, as described in Cohen, doesn't read on this. Because if you're identifying a certain store and then you're handing the card, or if you're creating a card that's purposed for a certain store, then you hand that card to a consumer. The reality on the ground is that the consumer has to know where to go. You don't send the consumer on a hunt to guess whether it's the dry cleaner down the street or the seers across town. So the real world backs us up in this. The certain store language in Cohen can't read on this court's claim construction because it pre-identifies the identity of who is in that payment category. Plus the undisputed dictionary definitions that both sides have pointed to include that a certain store means a fixed, settled, or known store. Were those dictionaries before the board? They were not, Your Honor. Okay. If I can spend 30 seconds, I see I'm into my rebuttal, but on the policy change, why at the very minimum there should be a remand, there's no dispute that I could perceive in the briefing that the patent office's policy actually did change with the labeling of Coltec and two other decisions as informative. And that policy as it now exists, contrasted from how it existed before, is that the discretion of the board under Section 315 and 325 has to be channeled so that there's no conducting of the trial. There's no conduct of IPR, no review. When the same petitioner, the same attacker, has previously presented the same art, unsuccessfully. But your point is discretion. Are we to say that there's no way that the director could make a change in policy that's not retroactive? Not under the Yang case. Interestingly cited in the intervener's own brief, the Yang case says that if the board or an agency has set a policy, it cannot rationally depart from the policy. In future cases. Well, that's different than resetting a policy. Right? I believe Your Honor might be referring to the retroactivity question. Right. The retroactivity question is actually resolved by the fact that this is a policy change without a statement of non-retroactivity. So it doesn't state, hey, this policy only applies in the future. In fact, it's silent on that. But the policy change occurred after the board reached its decision in this case, correct? That is correct, Your Honor, in the timing. But just one citation of a Supreme Court decision that supports that agency adjudication policy announcements do apply retroactively. It's called Chainery 2 from 1947, 332 U.S. 194. And I'd like to save my remaining time for rebuttal. Okay. Thank you. May it please the court. Elliot Williams for MasterCard. We have saved five minutes for the Patent Office representative to discuss some of the procedural issues. But I'd like to turn to the merits, beginning with the claim construction issue. I think the court correctly identified the claim construction issue as being dispositive for the single merchant claims. I'm going to point out that there's another set of claims that relate to one or more merchants, as I'm sure the court remembers. Those claims were separately invalidated. The claim construction issue with respect to whether multiple purchases are required or not is irrelevant to those claims. They fall under either construction, given the board's findings as to the disclosure of Cohen's type and group of stores limitation, as well as the board's reliance on any computer store disclosure of Cohen. I thought I was remembering that the board said that if the single merchant claims are unpatentable, then so are the morality ones. So that you're not walking away from one issue, if resolved in your favor, can decide the case. No, that's true. So if the court were to conclude that the board's claim construction is correct as to whether multiple purchases are required or not, then all the claims disappear. My point is that if this court were to try to change this claim construction in some way to require multiple purchases and to conclude that somehow Cohen's disclosure didn't anticipate under that construction, that would only affect the single merchant claims, because the one or more merchant claims are clearly broader than the single merchant claims. So they would be invalidated by Cohen regardless of the claim construction. So tell us why discussions of multiple transactions also include single transactions. You're talking about in the Cohen reference? I'm just not sure. On the claim construction, I mean, the board ultimately found that though that does talk about multiple transactions, it could include one. Right. So why do we say multiple means one? What language in the claim supports that? Yeah, I think, well, so then this turns out as to which claims we actually look at, because we just heard an argument about series that appears only in, I think, two claims across these two patents. There was never a construction of series. The board was never asked to reach that. That has to do with how the patent owner argued this case below, which is to just say all the claims require multiple transactions. And then they focused their argument on one claim in particular, and we can look at that one claim. The board focused on one claim. The board did, because the patent owner in its original responses below focused on claim 21 of the 988 patent. But it did argue before the board that that wasn't representative, right? I don't think they argued it wasn't representative. They never separately argued these independent claims. So if there's an argument being made now that series requires multiple transactions, that would only affect two of the claims, not, for instance, claim 21. And they never argued that below. They never argued that there was a different claim scope across these independent claims. They chose to say that all of the claims require multiple transactions. They focused their argument. They said that's true of all the independent claims. They mentioned every independent claim and said they all require multiple transactions, and they focused on claim 21 of the 988 patent. But they separately argued the other patent in their patent owner response, right? So originally, the way this case got presented to the board, there were two IPRs, one for each patent. They were separately briefed, but the arguments were identical across, essentially identical across both of those proceedings. There was never a distinction made between, for instance, the claim in the 486 patent uses the word series until we get to this court. So they weren't separately argued below, and that's what the PTAB found in its remand decision, that they weren't separately argued below. They were always argued together, and the focus was always on claim 21 of the 988 patent. With respect to that particular claim, you know, at most we have recitations here of, for instance, you know, authorize a payment for a purchase. That's step E of claim 21. Authorizing payment for said purchase, that's step F of claim 21. Nothing in the claim requires there be multiple purchases. Now, it can include multiple purchases. We're not disagreeing with that. The claim scope is certainly broad enough to encompass multiple purchases. But there's nothing in this claim that disavows a single purchase. In fact, it seems to specifically be directed to a single purchase when looking at the remaining claim limitations. Now, we heard something about the file history. Just on the language. So there's the plural word in the preamble, the plural word being purchases. Then there's a plural word in, where was it? I was just looking at it. Isn't it transactions? Step B says limits transactions. Is that the one? Yes. So why do those words not tell you that there has to be more than one? Yeah. So a couple reasons. First of all, remember in the context of this appeal, we're applying the broadest reasonable interpretation. So we're looking at, you know, what would a person of ordinary skill in the art have given this claim in terms of its broadest reasonable interpretation? And if the patent owner didn't like that, they could, of course, have appealed, excuse me, amended to specifically recite multiple transactions. Which, by the way, some dependent claims do say multiple transactions. So the patent owner knows how to claim that when it wanted to and it didn't. And it chose not to make an amendment to reflect that below. The second point is the specification itself confirms this use of transactions in the plural to mean a singular. This is at appendix page A82, column 7, line 63. I'm sorry. Which patent? By column? Okay. It's in the 988 patent. Okay. And column what? 7. Thanks. Bottom of column 7. Right. Line 63. This is in describing the invention. Such transactions may include a single transaction. So we know the patent owner himself is using this word in plural to mean one or more. That's also true, by the way, when he uses merchants and other terms in the patent that were previously construed below. So what line of column 7 were you on? I was reading at 63, I think. 63, 64. Okay. Yeah. It's hard to tell exactly, but right around there. We also cite this court's case law. It's in page 21 of our brief, the red brief, discussing the use of plural and how plural terms often mean one or more. It can include the singular. So I think all those things together, the fact that there were some dependent claims that specifically require multiple transactions. Well, what's your response to your friend on the other side who says that a single transaction might be disclosed in the specification, but it wasn't ultimately claimed? Well, my response is. There was a disclaimer in the prior art that it ultimately was claimed differently. Yeah. I see no disavowal in the file history of the Patent Office. The PTAB didn't find a disavowal in the file history either of claiming one or more transactions. The Franklin patent had to do with pre-identifying a merchant, which, as you know, is the issue that came up to this court last time this case was here. The amendments that were made were relating to the fact that the credit card can be used for multiple purchases, which, of course, it's true. Your account can be used for multiple purchases, but that's not the limitation in this claim. This claim is about authorizing a transaction using this. Well, while we did consider the single merchant issue the last time, we didn't actually have presented to us or have opportunity to consider the single transaction issue, right? I think that's fair. Yeah, it wasn't certainly the focus of the briefing last time, although the issue, I think, was mentioned, but it wasn't addressed in the court's opinion specifically, other than that the court did turn and look to the file history disclosure of discussion of the Langhans reference, where, again, there was a discussion of a transaction in the file history, not multiple transactions. So I think under the BRI, in view of the fact that the specification clearly is using the plural word transactions to include a single transaction, and in view of the dependent claims that do specifically claim multiple transactions, when that is an element that the patent owner wanted to include, the board's claim construction should be affirmed. Even if it's not, however, I do want to turn very quickly to the certain store disclosure of Cohen, because the board there made some factual findings that that teaching of Cohen would teach a person of ordinary skill in the art. They would understand that that can include the situation where the store is not specifically identified. And so, therefore, it falls within the scope of the single merchant limitation and can include multiple purchases. And is that the point on which, I may have misunderstood this, Mr. Greenspan said, that's really not consistent with Cohen's language about a certain store? Well, we think it is consistent. Different point. No, I think that's the same. But we have the wandering card holder wondering, where should I go with this? Where is this certain store? So the way the board addressed that question is to look at the entirety of the teachings of Cohen and to say, there is a breadth of disclosure here that Cohen teaches many different ways to limit this card, one of which is to limit the card to a certain store. And they say a person of ordinary skill in the art reading Cohen would not assume that you have to pre-identify the merchant in order to make a limitation to a certain store. You could identify the merchant by saying, the next store I use this at will be the certain store, and the card is limited to that store. That's how the board interpreted Cohen. Wait, I don't really understand that. So you say the next store I use this card at is my certain store? Correct. And then it becomes a different certain store the next time you use the card? No. How is there a limitation? Because at that point, as soon as you use the card, you go into a merchant, you use the card, that's your certain store. Okay, now that I've used it at that certain store, the card can only be used at the certain store, not some other store. So that was a factual finding that the board made based on the Cohen reference. This was not a court of first impression. You have to give deference to the board's findings if they're supported by substantial evidence. Cohen's teachings, I think, clearly provide substantial evidence for that finding. And even if they didn't, as we point out, we have an alternative argument for affirmance, which is the Cohen's teaching of any computer store. That, in our view, clearly includes a single computer store where you can make multiple purchases. The board obviously disagreed with us and said that that is plural, and we think it was an error to do that, and it seems to have conflated the disclosure of any computer store with Cohen's teachings of types of stores, plural. Okay. I see I've run into my colleague's time. Yeah, let's save your time. Thank you, Your Honor. Yes. May it please the court, Coke Stewart for the intervener on appeal, director of the USPTO. If Your Honor's don't have any questions about the timing issue, I'll just devote my argument to the alleged new policy of the board. So the argument that D'Agostino is making is that the board has announced a new policy under 325D, and they actually try to sweep in 315D as well. But as I think we made clear in our brief, informative decisions of the board are not agency policy. They're just examples of non-binding ways individual panels can handle cases, and I think the best evidence of the fact that it's not an agency policy is the fact that if you look at the three informative decisions here, they actually approach the issue in different ways. In the Coltec decision, which D'Agostino cites repeatedly, it does seem to be kind of an open and shut case. They see if the arguments are the same or substantially the same, and they decide to exercise their discretion not to institute. But in the other cases, they have a different analysis, and they go through other factors that go beyond whether the question before the court is same or substantially the same. But it is true that under the APA, an agency can't just randomly treat one party before it differently than another, right? That is true. I think if we cabin our discretion, then we need to follow our own policy of how that discretion's been cabined. This hasn't happened here yet. There is no formal policy of the board on how to handle these cases. They seem to depend on the facts and circumstances of the case. Even in the three informative decisions here, the question of whether the arguments were the same or substantially the same required a fair level of analysis. They really had to go through and compare what claims were at issue, what art was at issue, what arguments were made, and so forth. And then the next question, even if the board did find that they were the same or substantially the same, there would be other factors to consider in whether to exercise the discretion. But did any of that analysis occur here? It didn't occur here because D'Agostino didn't make those arguments to the board, so the board didn't get to consider its position in the first instance. D'Agostino is arguing that there is a policy change, but that's not really consistent with D'Agostino's conduct for the agency. Because when D'Agostino was before the agency in the CBM cases, it specifically opposed CBM institution on the basis of 325D. So D'Agostino is not well positioned to say it didn't understand that under the statute it had the ability to make those arguments until October 2017, a month after it filed its appeal brief in this case. So for those reasons, not only do we not believe there's a policy change, but we believe that D'Agostino waived its right to make those arguments. Are those two arguments independent, or does the absence of a definitive new policy support the argument for waiver? Because sometimes a clear enough change in law, and maybe this would be that if it existed, would justify late raising of an argument that simply wasn't available before. Agreed. I mean, if this was really a change in the law, then I think they would have a pretty fair argument to say, you know, consider remand. And oftentimes the parties will speak to the USPTO, we can make arrangements so that we're not bringing these issues to the court when they should be properly remanded. But here, the right existed in the statute when the AIA was passed, and D'Agostino took advantage of those arguments before the board. Well, let me just assess the point this way. Suppose that Coltec was not just informative, but was precedential and announced something like a rule, a real rule. Would you still have a good waiver argument? I don't think we would have a waiver argument, but I think we would have an argument that Coltec, if deemed precedential in October 2017, which it wasn't, would still only be forward-looking. And that's because, why? Like Boeing against Georgetown Hospital kind of thing, or something else? Well, we cite the Supreme Court case, you know, on the general rule that regulations... I think that's the one I just mentioned. Yes, that has to be forward-looking, but also the board's own standard operating procedures say that even with respect to precedential decisions, they apply to subsequent cases, not to then-pending cases. So, I mean, again, we might be able to work out an arrangement, especially in a significant change of law with the parties, but we're certainly not under obligation, nor is this court under any obligation to force a remand for further consideration. But you did something retroactive on SAS, right? Well, I think... It was applied post-institution for that announcement. Right. My understanding is that, you know, the agency is agreeing to, you know, take remands of these cases to look at, you know, all the claims and all the grounds to comply with SAS. That, arguably, was a very significant change in the law, and not only a change in the law, but something that is a mandatory requirement. You know, all claims must be evaluated by the board. All grounds must be evaluated by the board. Here, this is a discretionary issue. So even if we're changing policy, it's still discretionary, which wouldn't support remand in this case. If your honors have no further questions. Okay. Thank you. Thank you. Very quickly on policy, then I'd like to get back to patentability. Nike versus Adidas from July... I'm sorry, Adidas versus Nike from July 2nd of this year does state that principle that if there's a change in the law, then there was no obligation before the board to raise the exact issue as it was raised in the appellate court. Also, I think this is the first clear time I've heard the director say that there was no policy change, which is a surprise to me, because the labeling of the decision as informative meant that it's stating the new norm. This is not my words. This is the words of the Patent Office SOP, stating a new norm of the Patent Office. And I see informative decisions as something like operating on discretionary, channeling discretionary issues. And I see precedential decisions as something like what this court does with announcing standards of law. So I think they harmonize side by side, and they both represent potential policy issues. What about the point that as a general matter, or maybe this is even... I think maybe she referred to the standard operating procedure. These kinds of things are as a general matter, prospective only. The prospective statement exists only in the description of what is a precedential decision. In the standard operating procedure number, whatever. Correct. The SOP is what they call it. And I think that answers the question. Back to patentability. Please, your honors, keep in mind there are two separate things going on in every one of these claims. One is the definition of what is a payment category. That is what we are saying is the part of the claim that requires a multiple transaction capability in every secure transaction card. The second thing is there is some discussion, my friend is correct, where one transaction is described in some greater detail. That one transaction description in the middle of a method claim is talking about the communication in order to effect a use of that multi-transaction card. But make no mistake, the card itself has always had to be programmed with a multi-transaction capability. Finally, whether we independently argued, I ask your honors to look at the following pages. 9330-31, 8876, and I'll read 9643 right here. This shows that we were not grouping the claims together. 9643? 9643. It's the transcript of the hearing, line 20, talking about claim 24 of the 486 patent, which is different from the thing that they call the representative claim. Line 20, I'll pause while. Thank you. 9643. I'll go back to line 17. It says, designating one of a plurality of predefined payment categories which limit a nature of subsequent purchases in at least one of said payment categories. Actually, nature is a typo, you meant number. Because you can see right here, if you've got a number of subsequent purchases, that's the claim language from claim 24 in the 486 patent, going on. That's clearly more than one purchase, and a single-use card cannot be used to make, to fit that element. It just can't. We separately argued the independent claims. We never conceded representative claim status. And finally, my friend pointed to column 7, line 63, as a so-called definition that transactions mean something singular. It sounded a little bit absurd to me. Not quite. He didn't call it a definition. He said the plural, in general, sometimes can mean the singular, and your patent indicates that you at least contemplated that possible usage. Granted, that's the position. That's less than a definition. That's my friend's position. I understand, Your Honor. But, Your Honors, the sentence that he started begins with the words, such transactions. So you have to read one sentence before to find out what's really being discussed here, which reads, quote, the payment categories may be collectively defined as a variety of different types of transactions. Such transactions may include a single transaction for a specific amount of a purchase to be consummated. That's the types of transactions. Loose language. I agree. But then move on to column 8, and that's where, starting at line 17 in the 988 patent, that's the meat of what became the claims. Line 17 starts where it talks about multi-transaction authorization. That's what became the claim. So it says may also include. Correct, in the sense that there's a power by the applicant to claim either the single transaction or the multi-transaction. The multi-transaction are supported by column 8 that I just pointed to, starting line 17, and that's what became the claims, leaving in the dust, leaving behind any attempt to claim a single transaction card. So Cohen can't anticipate. Unless there are any further questions. Thank you. Thank you, Your Honors. The cases will be submitted. We thank both counsel.